IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
(EASTERN DIVISION)

| | |
|---|---|
| PATTISON SAND COMPANY, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION, AND MINE SAFETY AND HEALTH ADMINISTRATION (MSHA) <br><br> Defendants. | CIVIL LAW NO. <br><br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

COMES NOW, Plaintiff Pattison Sand Company, LLC ("Pattison"), by and through its undersigned counsel, brings this Complaint, and alleges as follows:

## NATURE OF ACTION

1. Pattison brings this civil action under the Due Process clause of the Fifth Amendment to the United States Constitution, the Declaratory Judgment Act, 28 U.S.C. § 2201, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and the inherent powers of the Court to review *ultra vires* actions of federal government agencies and officials.

2. Pattison operates an underground sand mine regulated by the Federal Mine Safety and Health Act of 1977 30 U.S.C. §§ 801 et al. ("Mine Act"), as enforced by Defendant Mine Safety and Health Administration ("MSHA"), an agency within the United States Department of Labor, and subject to the jurisdiction of Defendant Federal Mine Safety and Health Review Commission ("FMSHRC" or "Commission") and its Administrative Law Judges ("ALJs") an independent, quasi-judicial agency that provides review of MSHA enforcement actions.

3. Pursuant to the Mine Act, MSHA inspectors are required to regularly inspect mine facilities to ensure compliance with federal safety and health regulations promulgated in accordance with the Mine Act. Upon a belief that a violation of these regulations or the Act occurred, inspectors issue citations and orders, and MSHA proposes that mine operators pay a penalty, while the Mine Act and MSHA require that operators "abate" any alleged violation within a "reasonable time" set by MSHA. In certain well-defined and limited circumstances, MSHA inspectors have statutory authority to issue a "Withdrawal Order" without prior court review – an order closing down an area of the mine affected by an "accident," 30 U.S.C. § 813(k), or the failure to abate a violation as required by MSHA, 30 U.S.C. § 814(b), or for other specific and limited reasons set forth by the Mine Act (*e.g.*, untrained miner, 30 U.S.C. § 814(g)(1), unwarrantable failure to comply, 30 U.S.C. § 814(d)(1), or pattern of significant and substantial violations, 30 U.S.C. § 814(e)).

4. Upon information and belief, certain MSHA officials have created an *ultra vires* enforcement regime which encourages or places improper and undue pressure upon MSHA field inspectors to implement a pattern and practice of issuing Withdrawal Orders which are overbroad, or not warranted or not authorized by the statute or regulations. Plaintiff seeks judicial intervention in the form of a declaration that Defendant MSHA's actions are improper under the Mine Act and further seeks a permanent injunction enjoining MSHA from issuing withdrawal orders that are not authorized by the Mine Act.

5. When an MSHA inspector issues a Withdrawal Order, the Mine Act entitles the affected mine operator to seek expedited proceedings to determine whether the Withdrawal Order was properly issued. However, the rules promulgated and procedures followed by the Commission do not comply with this Mine Act mandate. Specifically, ALJs are not available for

assignment or review during certain hours and days when MSHA issues closure orders, and ALJs have complete and unbridled discretion to determine whether to consider or grant an application for expedited review. If the application for expedited review is granted, the ALJ has unlimited discretion to determine when a hearing will be held and whether the parties will have access to discovery prior to such hearing. Even when a review is granted, the ALJ can hold a hearing and then take into consideration the evidence received therein for an indefinite period of time without rendering a decision. Thus, even in the instance of an order effectively closing an entire mine, the ALJ may deny the operator's right to an expedited hearing or withhold his ruling following such a hearing, resulting in weeks or months of irretrievable economic losses as well as the creation of hazards at the mine due to inability to maintain the premises. No rule, regulation or express process has been adopted by the Commission to comport with the statutory and constitutional mandate that a mine operator who suffers ongoing irreparable harm as a result of an improper mine closure is given a meaningful opportunity for an expedited hearing and decision.

6. Because the review procedure the Commission created does not properly safeguard mine operators' due process rights, Plaintiff seeks judicial intervention in the form of a declaration that the Defendant Commission's present rules and procedures are contrary to the Mine Act and/or unconstitutional, or alternatively, that the Commission's attempts to comply with the Mine Act and regulations fail to do so. Plaintiff also seeks an injunction mandating that the Commission establish and abide by express procedures that ensure a mine operator's right to an expedited hearing immediately upon the issuance of a Withdrawal Order, including: (a) assignment of an ALJ within 12 hours of filing a withdrawal order contest; (b) responding to an operator's application for expedited proceedings within one business day; (c) immediate

3

00156326
Case 2:11-cv-01051-LRR   Document 1   Filed 12/02/11   Page 3 of 20

disclosure of evidence by MSHA supporting or rebutting the withdrawal order; (d) a hearing within two days of a withdrawal order contest; (e) a decision by the ALJ within 24 hours of the conclusion of the hearing, to prevent continued irreparable harm; and (f) a process to obtain the immediate certification for review by the Commission, and an expedited process for Commission review of withdrawal orders.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 and because the action arises under the United States Constitution and other federal laws.

8. Declaratory and injunctive relief is authorized by 28 U.S.C. § 2201(a) and Fed. R. Civ. P. 57 and 65.

9. Venue is proper in this judicial district under 28 U.S.C. § 1391(e) because the Plaintiff resides in this judicial district and the Defendants are part of the United States government.

10. The United States, including its departments and agencies, is not immune to suit for actions arising under the U.S. Constitution, and, in the APA, has waived sovereign immunity from suit seeking relief other than damages.

11. Individual officials of the United States or its departments or agencies are not immune to suit for *ultra vires* actions.

## PARTIES

12. Plaintiff Pattison Sand Company, LLC is an Iowa limited liability company with its principal place of business located in Clayton, Iowa. Pattison is an underground sand mine operator as that term is defined in the Mine Act, 30 U.S.C. § 803(d). Pattison operates the Pattison Mine located in Clayton, Iowa.

4

13. Defendant MSHA is the federal enforcement agency responsible for administering the provisions of the Mine Act. MSHA is an agency within the United States Department of Labor, and Congress established MSHA to carry out the Secretary of Labor's duties and responsibilities under the Mine Act. 29 U.S.C. § 557(a). MSHA's headquarters are located in Arlington, Virginia and it may be found throughout the country.

14. Defendant Federal Mine Safety and Health Review Commission ("Commission") is an agency of the United States government that provides administrative trial and appellate review of legal disputes arising under the Mine Act, but grants "deference" to the interpretations of law by MSHA. The Commission's headquarters and primary Office of Administrative Law Judges are located in Washington, DC.

## FACTS COMMON TO ALL COUNTS

**A.** **Framework of the Mine Act**

15. In 1977 Congress enacted the Mine Act. 30 U.S.C. §§ 801, et. seq.

16. The Mine Act regulates every mine in the United States, regardless of mine type, underground or surface, or resource mined (i.e. coal, metals, and non-metal minerals). Mine Act §§ 3(h), 4, 30 U.S.C. §§ 802(h), 803. The Act establishes mandatory mine safety and health standards, the violation of which result in mandatory civil penalties proposed against mine operators, civil penalties assessed against individual members of mine management, and potential criminal prosecution of operators or individuals. The Mine Act also provides for pre-judicial review, administrative orders withdrawing personnel from an affected area of the mine under certain limited conditions. *See* Mine Act §§ 103, 104, 107, 110; 30 U.S.C. §§ 813, 814, 817, 820.

17. Under the Mine Act, the Secretary of Labor, through MSHA, is required to "make frequent inspections and investigations in coal or other mines each year for the purpose" of obtaining and disseminating information related to health and safety conditions in American mines, gathering information regarding mandatory health and safety standards, determining whether imminent dangers exist, and evaluating compliance with mandatory health and safety standards and other issues related to citations, orders, or decisions issued pursuant to the Act. *See* Mine Act, § 103(a). These inspections are conducted by MSHA inspectors, who travel to mine sites and inspect the mine facilities to ensure mines are in compliance with the Mine Act and all regulations, including mandatory standards, promulgated in connection with the Act. Mine Act § 103, 30 U.S.C. § 813.

18. When they "believe" violations of the Mine Act's mandatory standards have occurred, MSHA inspectors have, as part of their enforcement duties, the power and duty to issue citations and certain orders. The citations and orders an MSHA inspector may mete out include requiring mine operators to abate alleged violations within a set time, and trigger monetary civil penalties of up to $220,000 per violation against the operator, as well as monetary penalties against the operator's agents. In addition, the Mine Act provides MSHA field inspectors with limited authority to issue Withdrawal Orders, which prohibit continued operations of affected mine areas. A Withdrawal Order is an extreme response to a condition alleged to exist at a mine because of the severe disruption it causes the operator, its employees and contractors, and the community that is supported by the mine. Recognizing this, the Mine Act allows MSHA inspectors to issue Withdrawal Orders only in the following limited circumstances:

    a.    In the event of an "accident" (expressly defined at 30 USC § 802(k) as, among other specific examples, a death or injury), 30 U.S.C. § 813 (j) and (k) trigger MSHA's authority to close mining operations in the affected area to protect the health and safety of miners, conduct an investigation, prevent the destruction of

6

00156326

Case 2:11-cv-01051-LRR   Document 1   Filed 12/02/11   Page 6 of 20

evidence, supervise the recovery of individuals at the mine, conduct rescue and recovery operations or return affected areas of such mine to normal;

b. Where a mine operator fails to abate a specific cited condition MSHA has the discretion to extend the time for abatement or issue a Withdrawal Order for the affected area until MSHA has determined that the condition has been abated. For purposes of the Mine Act, the condition subject to the Withdrawal Order must be the exact same condition as was cited in the initial citation; a similar hazard does not constitute a failure to abate. 30 U.S.C. § 814;

c. Where MSHA determines that the operator of the mine has committed two unwarrantable failure violations within 90 days, MSHA has the authority to shut down the affected area until the cited condition has been abated. For the purposes of enforcing the Mine Act, the Commission has defined an unwarrantable failure as: "reckless disregard," "intentional misconduct," "indifference," or "a serious lack of reasonable care." *Emery Mining Corp.*, 9 FMSHRC 1997 (Dec. 1987);

d. Where the operator has received one Withdrawal Order as a result of multiple unwarrantable failure citations, if MSHA discovers a similar violation during its subsequent inspection, MSHA may issue a Withdrawal Order until the alleged hazard has been abated. 30 U.S.C. § 814 (d) (2);

e. Where MSHA has determined, in accordance with criteria promulgated at 30 C.F.R. § 104, that an operator has a history of significant and substantial violations, then the Secretary will issue a notice in writing to the operator that it is alleged to have committed a pattern of violations. After issuing written notice, MSHA will conduct an inspection of the mine within 90 days. If, during this inspection, MSHA finds that there are additional significant and substantial violations, MSHA issues a Withdrawal Order for the area affected by the significant and substantial violation. A significant and substantial violation is issued only when a condition is alleged to have a reasonable likelihood of causing a reasonably serious injury. 30 U.S.C. § 814; *Mathies Coal,* 6 FMSRHC 1 (Comm'n Jan. 1984);

f. Where an MSHA inspector determines that an imminent danger exists at a mine, such inspector will issue a Withdrawal Order for the affected area, until it is determined that such imminent danger no longer exists. 30 U.S.C. § 817; and

g. Where the Secretary files a civil action with the Federal District Court seeking a permanent or temporary injunction, restraining order, or other appropriate relief as a result of an operator's refusal to comply with an express MSHA order, refusal to cooperate with an investigation, or where the Secretary believes that a pattern of violations exists at a mine. Such court order, after a hearing, may have the affect of subjecting a mine to a Withdrawal Order. 30 U.S.C. § 818.

B. **The Mine Act Provides Operators With a Procedure to Challenge Orders and Citations Issued by MSHA Inspectors, Including Withdrawal Orders**

19. As indicated above, the Mine Act seeks to grant the Secretary of Labor and MSHA extraordinary power to interfere with a mine operator's legitimate property interests and due process rights, in searching and occupying a mine, without prior court order, and to disrupt the operation of the mining process. Of course, this authority is limited by the Fifth Amendment to the U.S. Constitution, which prohibits the federal government from depriving a person of "life, liberty, or property, without due process of law." These due process rights are enshrined in the Constitution, the Mine Act, and by Supreme Court jurisprudence, which consistently recognizes a mine operator's legitimate property rights in the possession of and operation of a mine. *See e.g. Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, n. 21 (1994); *Donovan v. Dewey*, 452 U.S. 594, 598 (1981).

20. To attempt to conform to these due process rights, the Mine Act provides operators with a procedure to contest any inspectors' citation or order in a proceeding before a Commission ALJ, but concurrently seeks to prevent mine operators from challenging MSHA actions in federal district court. Mine Act § 105, 30 U.S.C. § 815. The ALJ has the statutory authority to affirm, modify or vacate the contested citation or order, and either party may appeal to the Review Commission, before the Mine Act authorizes an appeal to a federal circuit court of appeals..

21. Because Withdrawal Orders impose the most significant restraint on a mine operator's due process rights, the Mine Act seeks to provide mine operators with the right to contest them in an expedited proceeding. For example, § 105 of the Mine Act specifies that the "*Commission shall take whatever means is necessary to expedite proceedings* for hearing appeals of orders issued under § 104 of this title." (emphasis added). Similarly, section 107 of the Act

8

requires the Commission to "take whatever action is necessary to expedite proceedings" under an application for modification or vacation of a Withdrawal Order.

22. Once the Commission receives such an application or contest, the Commission must "forthwith" afford an operator the opportunity to challenge the merits of a Withdrawal Order in a hearing governed by the procedures outlined in the APA, 5 U.S.C. § 554. APA Section 554(a) requires ALJs to consider "the convenience and necessity of the parties or their representatives" in "fixing the time and place for hearings, while Section 554(c) requires agencies to provide interested parties with the opportunity for "submission and consideration of facts, arguments … or proposals of adjustment."

23. Due process and the Mine Act prohibit MSHA from giving any weight to, or relying on contested or prior vacated Citations and Orders, in determining whether to issue another Withdrawal Order. Accordingly, in considering whether a Withdrawal Order was properly issued, ALJs may not consider prior vacated citations or orders that MSHA may allege support the new Order. Such citations are expunged permanently or temporarily (pending review) from an operator's record and do not become a part of the operator's history of previous violations. *Sec'y of Labor v. Youghiogheny & Ohio Coal Co.*, 7 FMSHRC 200, 203 (Comm'n Feb. 4, 1985).

C. **MSHA's Pattern and Practice of Enforcement Abuse, Including Issuing Improper Withdrawal Orders**

24. Upon information and belief, MSHA has increased significantly the number of Withdrawal Orders issued over the last three years without any justification, using such orders to achieve goals not consistent with Mine Act authority. Indeed, upon information and belief, despite the fact that the Mine Act authorizes mine closures in the very limited circumstances enumerated above, MSHA, through its District Managers, has developed a pattern and practice

9

of pressuring its inspectors to issue Withdrawal Orders to operators without legitimate grounds for doing so. Such improper orders are not authorized by the Mine Act, and are outside of MSHA's authority. Upon information and belief, MSHA District Managers are pressuring MSHA inspectors to issue improper Withdrawal Orders to harass, intimidate and "settle scores" with certain mine operators, gain leverage to achieve personal goals or even seek to renegotiate agreed-to plans for mine operations.

25. Upon information and belief, MSHA's established training procedures for field inspectors includes an express instruction to issue a Withdrawal Order to an operator in order to coerce an operator to comply with certain practices. Such coercion is not authorized by the Mine Act and is an abuse of MSHA's enforcement authority.

26. Upon information and belief, District Managers are targeting for closure those mine operators who have successfully contested previously issued MSHA citations and orders. District Managers are also targeting for closure those mine operators with which MSHA has reached agreement on operating procedures or abatement of violations, but subsequently have "buyer's remorse." These targeted mines are subjected to a pattern and practice of repeated unwarranted inspections, conducted by teams of inspectors, with veiled or direct instructions to the inspection teams to find a way to issue Withdrawal Orders.

27. As part of this pattern and practice, MSHA inspectors have contrived justifications for issuing Withdrawal Orders. An example of MSHA's enforcement abuse includes its response to a fall of ground that occurred at Pattison's underground mine on November 7, 2011. The fall occurred in an isolated, inactive area of the underground mine, while an employee was scaling/milling to rehabilitate the location using a machine that protects the employee with a canopy. No one was injured, and the only person present was one miner

10

00156326

Case 2:11-cv-01051-LRR   Document 1   Filed 12/02/11   Page 10 of 20

who was conducting ground control activities in accordance with a comprehensive, MSHA agreed-to ground control plan. MSHA inspected the site and on November 9, 2011 issued a citation under 30 C.F.R. § 57.3360, which requires that ground support shall be used, even though the mine was using ground support according to the MSHA-agreed to plan.

28. In conjunction with the Citation, MSHA also issued a Withdrawal Order pursuant to Section 103(k) of the Mine Act. 30 U.S.C. § 813(k). MSHA exceeded its authority in issuing the Order because, *inter alia*: 1) § 103(k) Orders are only applicable to the "affected area" and MSHA exceeded its authority by closing virtually the entire Mine; and 2) § 103(k) orders are only authorized in response to an "accident," as that term is defined expressly by Congress in the Act; and no such accident occurred or was alleged to have occurred. 30 USC § 802(k).

29. MSHA's justification for the November 9, 2011 Withdrawal Order and Citation improperly included a prior 2011 withdrawal order and citation, pending review before the Review Commission. That prior order essentially closed the underground mine for more than two months and was "terminated" only following the scheduling of a hearing, and an agreement between MSHA and Pattison on the very ground control plan now in effect, but violated (by MSHA) through the issuance of the November 9, 2011 closure order and citation.

30. MSHA's pattern and practice of issuing improper Withdrawal Orders constitutes enforcement abuse, a denial of due process, and a violation of the Mine Act, the APA, and other laws. These acts cause irreparable harm, disrupt mine operations, cause damage to mine employees, create safety risks, and adversely impact the company and the economy of the community in which the mine is located. Indeed, with regard to the Pattison mine, MSHA's improper closure has caused Pattison tens of thousands of dollars per day, and continues to do so as of the date of this filing.

**D. The Commission's Rules and Established Procedures Do Not Provide Operators With the Statutorily-Mandated Expedited Proceeding to Contest Withdrawal Orders**

31. Compounding the damage to mine operators caused by MSHA's improper pattern and practice of Withdrawal Order abuse are the Commission's promulgated rules and implementation procedures for providing a so called "expedited" hearing on those orders. Indeed, despite clear statutory requirements, the Commission's procedures fail to provide mine operators with due process protections required by the Mine Act, other laws and the Constitution.

32. Mine operators challenging a Withdrawal Order must file a motion to expedite proceedings to seek timely relief. 29 C.F.R. 2700.52. However, that rule prevents the Commission from holding an expedited hearing until at least four days have elapsed after an operator files such a motion.

33. In practice, because there is no Commission rule mandating the immediate assignment of an ALJ when an expedited hearing is requested to address a withdrawal order, it often takes four days simply to have an ALJ assigned to the case and far longer to schedule a hearing.

34. The Commission and its Office of ALJs are closed at 5 p.m. on weekdays, closed on weekends and federal holidays, and has no "hot line" or on duty clerk to address emergency requests for a hearing filed when mines are closed by MSHA orders, even though such orders often occur during non-routine business hours and MSHA conducts inspections on night, weekend and holiday shifts.

35. There is no Commission rule, regulation or process that requires an ALJ to consider a motion for an expedited hearing in a timely fashion and often ALJs will not order a hearing until it is convenient for their schedule.

12
00156326
Case 2:11-cv-01051-LRR   Document 1   Filed 12/02/11   Page 12 of 20

36. Recent motions for expedited proceedings requested to review mine withdrawal orders have not been considered or acted on for days or weeks, while MSHA has closed a mine and the operator has no recourse.

37. The Commission has established no procedure to process applications for expedited review and grants total discretion to an ALJ to determine when and whether to grant such an application. *Sec'y of Labor v. Wyoming Fuel Co*., 14 FMSHRC 1282, 1287 (1991).

38. Importantly, the regulations, rules, and Commission precedent make no distinction between processing those applications for expedited review of ongoing Withdrawal Orders and any other kind of challenge. Despite the fact that a mine closed on improper grounds constitutes an ongoing irreparable harm, the Commission has enacted no requirement that such cases be expedited in reality, and offers no guarantee or procedure that a hearing will be held "forthwith." Nor has the Commission enacted any requirement that would allow it to "*take whatever means is necessary to expedite proceedings*."

39. Instead, according to the Commission, the Mine Act only "require[s] the Commission to provide an opportunity for a hearing on [a Withdrawal Order] with dispatch and without undue delay but, nevertheless, within a period of time reasonable under the circumstances of each case. The terminology requires promptness, but does not require immediacy under all circumstances." *Id.*

40. Under this interpretation, what is "reasonable," according to the Commission, is subject to "informed discretion" of an ALJ without any further constraints. *Id.*

41. Thus, even if an ALJ grants a motion for an expedited hearing under 30 C.F.R. § 2700.52, as required by the Mine Act, Commission precedent, rules and practice fail to

guarantee that an ALJ will set a timely schedule for the hearing to consider minimizing the irreparable harm caused by a withdrawal order, even if such order is facially invalid.

42. Nor does existing Commission precedent guarantee that an ALJ will provide even basic discovery necessary to present "a full and true disclosure of the facts." *See* 30 C.F.R. § 63(b). This procedural inadequacy runs counter to the language of the Mine Act, and permits ALJs to deny mine operators proper due process protections required by statute and the Constitution, and "full and true disclosure" and require them to trade these rights away for a not so expedited hearing.

43. Mine operators are therefore not guaranteed an expeditious and meaningful hearing to challenge Withdrawal Orders and are instead subject to the case-by-case whims of ALJs.

44. Even when the Commission does hold a hearing in response to a Motion for Expedited Hearing, there are no rules which require the ALJ promptly to issue an order based upon the evidence received. For example, with regard to the Pattison mine closure, discussed *supra*, Pattison moved for an expedited hearing on November 11, 2011. The Commission scheduled a hearing on Friday, November 18. However, at the conclusion of the hearing, the ALJ stated he wanted briefs on the issues raised therein. The ALJ scheduled briefs to be filed by December 2, 2011 and gave no indication as to when thereafter he might render his decision. As a result, the Pattison mine remains improperly closed indefinitely, at a cost of tens of thousands of dollars per day, and Pattison has no other options to challenge the closure.

45. Upon information and belief, other mine operators have suffered similar implications which demonstrate the Commission's pattern and practice of failing to provide for a truly expeditious hearing following a Withdrawal Order.

14

00156326

46. Thus, even when the Commission grants a mine operator what it calls an expedited hearing under 30 C.F.R. § 2700.52, the Commission rules provide ALJs with unlimited discretion to grant or reject an operator's request for an expedited hearing; and even when a hearing date is granted, the Commission rules and the application of those rules can and do denigrate a mine operator's legitimate property and due process rights by keeping a mine closed for weeks or longer.

47. Consequently, the Commission rules under Section 2700.52, and/or its procedures enacted in an effort to follow those rules, unreasonably interfere with a mine operator's constitutionally protected property rights protected by the Fifth Amendment of the U.S. Constitution, and provide insufficient due process protection for mine operators seeking redress under the Mine Act, the APA and the Constitution.

48. Furthermore, the Commission precedent interpreting the Mine Act, and Section 2700.52 of the Commission's rules, also permit Commission ALJs to exercise unlimited discretion that exploits the procedural deficiencies of the Commission rules.

49. The Mine Act provides MSHA limited authority to shut down an operator's mine, thereby stripping the operator of property rights and statutory and constitutional rights, prior to any opportunity to be heard by an Article III Judge or even an ALJ. Such pre-hearing deprivation constitutes a violation of the operator's constitutional rights. However, the Mine Act attempts to cure this inadequacy by allowing the operator to immediately seek an expedited hearing. Unless the operator is assured an immediate and meaningful hearing, and that hearing is followed with a prompt decision, the mine remains closed without review, under an MSHA withdrawal order, and the constitutional injury is exacerbated. The Commission's practice of not setting time requirements in which to address an application for expedited consideration

forthwith other than delaying it for at least five (5) days, of allowing applications for expedited proceedings to languish, of granting total discretion to ALJs to consider, grant or deny applications for expedited consideration regardless of the fact that a mine has been closed and a property right has been deprived, of denying "a full and true disclosure of the facts" and of refusing to rule for weeks after a hearing is actually held, is impermissible under the Mine Act and the Constitution. The Mine Act and the Constitution require immediate action in order to cure these injuries.

## CLAIMS FOR RELIEF

### COUNT I
*(**Declaratory and Injunctive Relief against MSHA for Violation of Constitutional Fifth Amendment Due Process and the Mine Act Provisions**)*

50. Plaintiff realleges and incorporates by reference paragraphs 1 – 49.

51. This is a claim for Declaratory Judgment under 28 U.S.C. § 2201.

52. An actual case or controversy exists as to whether MSHA is abusing its enforcement authority by issuing improper Withdrawal Orders.

53. As set forth above, the Mine Act allows MSHA only limited authority to issue Withdrawal Orders effectively shutting down mining operations. MSHA developed a pattern and practice of issuing Withdrawal Orders outside of their limited authority under the Mine Act in order to harass, intimidate or seek revenge against mine operators, with no legal grounds to do so.

54. As stated above, MSHA improperly and illegally relied on vacated citations as grounds for issuing Withdrawal Orders. MSHA has improperly and illegally issued withdrawal orders to abrogate previously agreed-to mine plans and procedures. MSHA has deprived its field inspectors of discretion to inspect and respond to the conditions at a mine site, and has required

16

inspectors to issue improper Withdrawal Orders, effectively shutting down mine operations, without legitimate reasons.

55. Defendant's unauthorized and *ultra vires* closures of mining operations, including Plaintiff's, have unconstitutionally deprived Plaintiff to a property right without proper judicial review and, absent judicial intervention, will continue to do so. Plaintiff seeks a declaratory judgment by the Court indicating that MSHA is acting outside of its statutory authority by requiring or pressuring inspectors to issue Withdrawal Orders based on improper grounds.

56. Plaintiff is also entitled to a permanent injunction preventing MSHA from continuing its pattern and practice of issuing improper Withdrawal Orders and from placing undue pressure on inspectors to issue Withdrawal Orders.

57. WHEREFORE, Plaintiff respectfully requests that this honorable Court:

   h. Declare that MSHA has exceeded its authority under the Mine Act by placing requirements or undue pressure upon MSHA field inspectors to improperly issue withdrawal orders;

   i. Grant a permanent injunction requiring MSHA to strictly comply with the language of Mine Act;

   j. Grant a permanent injunction preventing MSHA from requiring field inspectors to issue Withdrawal Orders or putting undue pressure upon field inspectors to do so;

   k. Grant a permanent injunction preventing MSHA from using the citation/order process to renege on previously agreed-to mine plans;

   l. Grant a permanent injunction preventing MSHA from relying upon vacated or contested citations and orders as grounds for Withdrawal Orders; and

   m. Order such further relief as may be deemed just and proper by this Court.

### COUNT II
***(Declaratory and Injunctive Relief against the Commission for Violation of Constitutional Fifth Amendment Due Process and the Mine Act Provisions)***

58. Plaintiff realleges and incorporates by reference paragraphs 1 – 57.

59. This is a claim for Declaratory Judgment under 28 U.S.C. § 2201.

60. Under the Fifth Amendment to the United States Constitution, the Due Process Clause prohibits the federal government from taking any action that deprives persons of "life, liberty, or property, without due process of law."

61. The Mine Act provides for a mandated process in the form of a hearing to review orders and citations before an ALJ. However, in the event of a Withdrawal Order—a pre-hearing deprivation—the Mine Act requires a post-deprivation hearing to occur "forthwith" in order to seek compliance with the Fifth Amendment.

62. As stated above, in the Commission's promulgated rules and by its practices, the Commission has neglected its constitutionally and statutorily required duty to provide a truly expedited hearing upon withdrawal orders. No Commission process, procedure or regulation places any requirement on Commission ALJs to timely respond to applications for expedited review, to consider the ongoing irreparable harm caused by a mine closure, or to hold a prompt and adequate hearing. Further, no regulation, process or procedure is set in place allowing for the mine operator to obtain discovery or to be meaningfully heard at the hearing when it is eventually set. Finally, even when the Commission does hold a hearing, no process, procedure or regulation places any requirement on Commission ALJs to issue a prompt decision, thus allowing a mine closure to languish for weeks.

63. This practice of excessive delay routinely denies Plaintiff, and other similarly situated mine operators, with appropriate procedural protection against improper enforcement of sections 103, 104, and 107 of the Mine Act. Further, Commission practices deny Plaintiff and other similarly situated mine operators with the opportunity to present evidence, factual

18

00156326
Case 2:11-cv-01051-LRR   Document 1   Filed 12/02/11   Page 18 of 20

arguments, and other material as necessary to appropriately challenge improperly issued withdrawal orders.

64. Plaintiff seeks a Declaratory Judgment declaring that the Commission's current rules and practices are inadequate under the Constitution and/or the Mine Act.

65. Plaintiff also seeks an injunction requiring the Commission to establish rules and procedures that adequately addresses mine operators' due process rights.

66. WHEREFORE, Plaintiff respectfully requests that this Court:

   a. Declare that the Commission's current rules and practices violates the Mine Act's requirement that Withdrawal Order contests and requests for expedited hearings be heard expeditiously;

   b. Declare that the Commission's current rules and practices regarding expedited hearings of Withdrawal Orders are invalid under the Fifth Amendment to the United States Constitution or, in the alternative, that the statute's provision for withdrawal orders are invalid under the Fifth Amendment;

   c. Grant Plaintiff a permanent injunction requiring the Commission to establish adequate rules and procedures that, in the event of a Withdrawal Order and request for expedited hearing, an assigned ALJ must be assigned within 12 hours of the request, and respond to a Complainant Mine Operator's application for expedited proceedings within one business day;

   d. Grant Plaintiff a permanent injunction requiring the Commission, in the event of a Withdrawal Order that effectively shuts down a part or all of mining operations, to establish procedures that require an immediate post-deprivation hearing, to occur no more than two days after the issuance of the Withdrawal Order, preceded by "a full and true disclosure of the facts," by MSHA;

   e. Grant Plaintiff a permanent injunction requiring that once an expedited hearing is held, the Commission ALJ will issue a ruling within 24 hours of the conclusion of that hearing;

   f. Grant Plaintiff a permanent injunction establishing a process to obtain the immediate certification for review by the Commission; and

   g. Order such further relief as may be deemed just and proper by this Court.

Dated: December 2, 2011

/s/ James L. Pray
James L. Pray, AT0006318
BROWN, WINICK, GRAVES, GROSS,
BASKERVILLE AND SCHOENEBAUM, P.L.C.
666 Grand Avenue, Suite 2000
Des Moines, IA 50309-2510
Telephone: 515-242-2404 / 515-242-2460
Facsimile: 515-323-8504 / 515-323-8560
E-mail: pray@brownwinick.com


Henry Chajet, D.C. Bar # 421915
Edward Wisneski, D.C. Bar # 470085
PATTON BOGGS, LLP
2550 M Street, NW
Washington, DC 20037
Phone: (202) 457-6000
Facsimile: (202) 457-6315
Email: hchajet@pattonboggs.com
      ewisneski@pattonboggs.com

ATTORNEYS FOR PLAINTIFF

20
00156326
Case 2:11-cv-01051-LRR   Document 1   Filed 12/02/11   Page 20 of 20