# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 12-1194
_____

Pattison Sand Company, LLC,   *
                              *
            Petitioner,       *
                              *
                              *   Petition for Review of an Order
    v.                        *   of the Federal Mine Safety and
                              *   Health Review Commission.
Federal Mine Safety and Health Review *
Commission; Secretary of Labor; Mine  *
Safety and Health Administration,     *
                              *
            Respondents.      *

_____

No. 12-1196
_____

Pattison Sand Company, LLC,   *
                              *
            Plaintiff/Appellant, *
                              *
                              *   Appeal from the United States
    v.                        *   District Court for the
                              *   Northern District of Iowa.
Federal Mine Safety and Health Review *
Commission; Mine Safety and Health    *
Administration,               *
                              *
            Defendants/Appellees. *
_____

Submitted: May 16, 2012
Filed: July 31, 2012
_____

Case 2:11-cv-01051-LRR   Document 27   Filed 07/31/12   Page 1 of 17
Appellate Case: 12-1194   Page: 1   Date Filed: 07/31/2012 Entry ID: 3937183

Before MURPHY, BENTON, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

Pattison Sand Company operates a sandstone mine in Clayton, Iowa. After part of the mine roof collapsed near where a miner was working, the Mine Safety and Health Administration (MSHA) issued an order under § 103(k) of the Federal Mine Safety and Health Act (the Act), 30 U.S.C. § 813(k), prohibiting any activity in much of the mine. Pattison challenged the order before the Federal Mine Safety and Health Review Commission (the Commission). An administrative law judge (ALJ) determined that the order was valid and that the Commission lacked authority to modify it.

Pattison separately filed a complaint in federal district court against MSHA and the Commission alleging that their enforcement actions and review procedures are contrary to the Act and the Fifth Amendment's due process clause. The company then moved for a temporary restraining order and preliminary injunction preventing MSHA from enforcing parts of the § 103(k) order. The district court[1] denied relief. In this consolidated appeal Pattison petitions for review of the ALJ's decision and appeals the district court's denial of relief. We grant in part and deny in part the petition for review, and we affirm the judgment of the district court.

---

[1] The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

I.

Congress enacted the Mine Safety and Health Act of 1977 to promote the health and safety of miners, the mining industry's "most precious resource." 30 U.S.C. § 801(a). The Act provides the Secretary of Labor, acting through MSHA, the authority to promulgate health and safety standards for mines and conduct regular inspections. Id. §§ 811(a), 813(a); 29 U.S.C. § 557a.

In the event of a mine accident, § 103(k) of the Act gives the Secretary authority to "issue such orders as [s]he deems appropriate to insure the safety of any person in the . . . mine." 30 U.S.C. § 813(k). Accident is defined to "include[]" a "mine explosion, mine ignition, mine fire, or mine inundation, or injury to, or death of, any person." Id. § 802(k). The Act provides in § 104 that the Secretary may issue citations for violations of MSHA regulations and specify a "reasonable time for . . . abatement," even if there has not yet been an accident. 30 U.S.C. § 814(a). If abatement does not occur within the specified time period, the Secretary may order the mine to remove personnel from the area found to be in violation of the abatement order. Id. § 814(a), (b). Upon finding that an "imminent danger" exists in a mine, the Secretary has further authority under § 107(a) of the Act to order withdrawal of personnel from the area of the mine "throughout which the danger exists." Id. § 817(a).

A mine operator can contest a citation or order issued under the Act before the Commission, an independent adjudicatory body which provides administrative hearings and appellate review. See id. §§ 815(d), 823. After an order is contested, an ALJ appointed by the Commission conducts an administrative hearing and renders a decision. Id. § 823(d)(1). An aggrieved party may seek discretionary review of this decision before the full Commission. Id. § 823(d)(2)(A)(i). If the Commission declines to exercise such authority, the ALJ's decision becomes the Commission's final decision. Id. § 823(d)(1). That decision is appealable to a United States Court of Appeals. Id. § 816(a)(1).

-3-

Case 2:11-cv-01051-LRR   Document 27   Filed 07/31/12   Page 3 of 17
Appellate Case: 12-1194     Page: 3     Date Filed: 07/31/2012 Entry ID: 3937183

Pattison's operations involve mining sandstone in both above and underground areas. Its mine is one of only three underground sandstone mines in the country and is subject to the Act. The sand produced by the mine is used by other companies to obtain oil and natural gas through fracking. In August 2011, MSHA inspectors issued an imminent danger order under § 107(a) of the Act closing the mine due to a danger of roof falls, also known as ground falls.[2]

In the week after the imminent danger order issued, MSHA inspectors traveled to the mine and observed between nine and eleven roof falls. Pattison contested the order before the Commission, and in October 2011 the company and MSHA agreed to a settlement under which the order would be lifted and Pattison would abide by a ground control plan its experts had proposed. As part of this plan, Pattison agreed to routinely scrape away loose material from the mine roof, known as scaling, and to place bolts and mesh on the roof in areas that lacked four feet of solid caprock[3] above the sandstone being mined.

On November 7, 2011, a roof fall occurred in an underground portion of the mine where a miner was using an excavator to scale the roof. Fortunately the miner was in a protected cab and was uninjured by the fall. That same day, MSHA inspector Jim Hines received a "hazard complaint" of an unreported accident at the mine and went to investigate. Kyle Pattison, the mine owner, joined him on a trip to the site of the roof fall, where they saw the excavator partially covered in caprock that had fallen from the mine roof. Because they did not want to get too close to the fallen

---

[2]As used in the mining industry, a "fall" is "[a] mass of rock, coal, or ore that has collapsed from the roof or sides of a mine roadway or face. Falls of ground are responsible for the greatest proportion of underground deaths and injuries." <u>Dictionary of Mining, Mineral, and Related Terms</u> 199 (2d ed. 1997).

[3]The record indicates that caprock is a stronger, harder, or more resistant rock type overlying the sandstone being mined.

-4-

Case 2:11-cv-01051-LRR   Document 27   Filed 07/31/12   Page 4 of 17
Appellate Case: 12-1194   Page: 4   Date Filed: 07/31/2012 Entry ID: 3937183

debris, they estimated the size of the fall to be 35 feet across and 35 feet long with a depth of 12 to 18 inches and a weight of 20 to 30 tons.

Two days later, Hines issued a § 103(k) order "to assure the safety of persons at this operation." The order indicated that a roof fall had occurred in an unbolted area of the mine which "could have resulted in a fatality." The order prohibited activity in "all areas of the mine South of crosscut L that are not bolted and meshed until an MSHA examination and/or investigation has determined that it is safe to resume mining operations in the area." Hines also issued a citation under § 104(a) indicating that the ground control plan Pattison had instituted as part of the settlement "is not adequate to insure miner safety." Within a week of issuing the § 103(k) order, MSHA modified it to permit Pattison to retrieve equipment for the bolting and meshing process and to allow four Pattison personnel to enter the mine south of crosscut L for a total of 20 hours to evaluate ground conditions.

The parties agree that the § 103(k) order shut down the majority of the underground portion of the mine. Pattison claims that it loses between $20,000 and $50,000 daily as a result of the order and that it would cost over $10 million to install bolts and mesh throughout the underground portion of the mine. Counsel for the Secretary represented at oral argument that following the issuance of the § 103(k) order, Pattison increased production at the surface portion of the mine and bolted and meshed new areas of the underground portion with the result that production is at or in excess of the level achieved before the order issued.

Before the Commission Pattison challenged the validity of the § 103(k) order and the § 104(a) citation. It sought to have both declared invalid, or in the alternative to have the order modified to limit it to the immediate area surrounding the November 7 roof fall. Pattison contended that the § 103(k) order was invalid because the roof fall had not been an "accident" within the meaning of the Act and that even if it had been, the order exceeded MSHA's statutory authority.

-5-

An ALJ held an expedited hearing nine days after the order issued. Inspector Hines and MSHA district manager Steve Richetta testified that at the time of the November 7 roof fall, Pattison was in compliance with the October 2011 ground control plan. They both explained, however, that the roof fall indicated that the plan was not working since caprock was continuing to fall. Richetta explained that the fall was particularly troubling because it occurred in what was supposed to be one of the safest areas of the mine, an area where bolting and meshing had not been required due to the presence of caprock at least four feet thick. He indicated that if Pattison continued to operate the underground portion of the mine without providing additional roof support, "someone . . . would be injured or we would have a repeat of the fall that occurred." Dr. Christopher Mark, an MSHA mining expert, testified that based on the fact that caprock had fallen in the November 7 roof fall, the risk of a roof fall injuring miners in any underground area of the mine lacking additional roof support was "unacceptably high."

Pattison presented expert testimony from Dave West, a sandstone ground control expert. West testified that the area where the fall occurred was uniquely situated because of the presence of a nearby "gully" which had let water in, weakening the mine roof. He contended that it was a "quantum leap" to conclude that the instant roof fall indicated a need for bolts and mesh throughout the underground portions of the mine.

Approximately two weeks after the hearing, Pattison contacted MSHA and requested that the order again be modified to permit Pattison personnel and experts to enter the underground portion of the mine to evaluate conditions, install monitoring equipment, and conduct tests. The request was denied because MSHA did not "believe that [the] proposed work plan justifies the exposure of individuals to the hazards of the unsupported roof at the Pattison mine." Pattison then filed an emergency motion with the ALJ again requesting the same modifications.

-6-

Case 2:11-cv-01051-LRR   Document 27   Filed 07/31/12   Page 6 of 17
Appellate Case: 12-1194     Page: 6      Date Filed: 07/31/2012 Entry ID: 3937183

On December 13 the ALJ issued a decision and order. He vacated the § 104(a) citation, determining that prior to the November 7 roof fall Pattison had had no notice that the ground control plan was insufficient to protect its miners. He affirmed the § 103(k) order, however, concluding that the roof fall was an "accident" within the meaning of the Act and that MSHA's issuance of the order did not constitute an abuse of discretion. The ALJ also denied Pattison's request to limit the scope of the order to the immediate area of the roof fall and its emergency motion to modify the order to allow its experts access to the mine. The ALJ determined that the Commission has no authority to modify a § 103(k) order and that if the modification requests were alternatively viewed as motions under the Act's temporary relief provision, see 30 U.S.C. § 815(b)(2), they failed because Pattison could not meet the requirements for such relief. Pattison sought discretionary review of the ALJ's decision by the full Commission, which was denied.

While Pattison's claims were pending before the ALJ, the company sued MSHA and the Commission in federal district court for declaratory and injunctive relief, alleging that the agency's enforcement policies and expedited relief procedures failed to comply with the Act and violated the Fifth Amendment's due process clause. After the ALJ issued his decision, Pattison filed a motion in the district court for a temporary restraining order and preliminary injunction prohibiting MSHA from using the § 103(k) order to "prevent Pattison's essential personnel and experts from entering the underground portions of the [mine] pending the outcome of this lawsuit." The district court denied the motion, concluding that it lacked subject matter jurisdiction. Pattison filed a motion for reconsideration, which was also denied.

Pattison petitions for review of the ALJ's denial of its request to vacate the order and his determination that the Commission lacks authority to modify a § 103(k) order. It also appeals the district court's denial of its motion for a temporary restraining order and preliminary injunction.

-7-

Case 2:11-cv-01051-LRR   Document 27   Filed 07/31/12   Page 7 of 17
Appellate Case: 12-1194    Page: 7    Date Filed: 07/31/2012 Entry ID: 3937183

II.

We review the ALJ's findings of fact for "substantial evidence on the record considered as a whole." 30 U.S.C. § 816(a). Substantial evidence means "more than a scintilla but less than a preponderance." Midgett v. Wash. Grp. Int'l Long Term Disability Plan, 561 F.3d 887, 897 (8th Cir. 2009) (citation omitted). The ALJ's legal conclusions are reviewed de novo. See Ahmed v. Ashcroft, 396 F.3d 1011, 1014 (8th Cir. 2005). When those legal conclusions involve the interpretation of the Act, we must "give effect to the unambiguously expressed intent of Congress." Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 (1984). If the Act "is silent or ambiguous with respect to the specific issue," we defer to "a reasonable interpretation made by the administrator of [the] agency." Id. at 843–44. Because the Act gives enforcement authority to the Secretary while vesting adjudicatory authority in an independent body, the Secretary's litigation position before the Commission is entitled to deference because it "is as much an exercise of delegated lawmaking powers as is the Secretary's promulgation of a . . . health and safety standard." Sec'y of Labor v. Excel Mining, LLC, 334 F.3d 1, 6 (D.C. Cir. 2003) (quoting Martin v. Occupational Safety & Health Review Comm'n, 499 U.S. 144, 157 (1991)).

Pattison first argues that the ALJ erred by reviewing the § 103(k) order under an arbitrary and capricious standard rather than for reasonableness. The Act is silent as to the appropriate standard of review and the Commission has not specified a standard. The ALJ looked to the Administrative Procedure Act (APA), which provides an arbitrary and capricious standard of review for agency action. See 5 U.S.C. § 706(2)(A). This court has previously recognized that the APA's arbitrary and capricious standard should be used if a statute does not specify a standard of review for an agency's nonfactual determinations. See Friends of Richards-Gebaur Airport v. F.A.A., 251 F.3d 1178, 1184–85 (8th Cir. 2001). We thus conclude that the ALJ's decision to apply arbitrary and capricious review here was not erroneous.

-8-

We next turn to Pattison's argument that the ALJ erred by concluding that the roof fall was an accident within the meaning of the Act. Because the Act only provides for issuance of a § 103(k) order "[i]n the event of an[] accident," 30 U.S.C. § 813(k), the Secretary lacked authority to issue the order if the roof fall was not an accident. The Act provides that the term accident "includes a mine explosion, mine ignition, mine fire, or mine inundation, or injury to, or death of, any person." 30 U.S.C. § 802(k). Pattison urges that this definition unambiguously supplies an exhaustive listing of the events that are an accident. Since a roof fall is not one of the events listed and no person was injured or killed as a result of the roof fall here, the company contends that no accident occurred. We disagree.

The plain text of the Act suggests that the term accident is not limited to the enumerated items contained in the definition. The definition uses the word "includes," which "is usually a term of enlargement, and not of limitation." Burgess v. United States, 553 U.S. 124, 131 n.3 (2008) (citation omitted). "When a statute uses the word 'includes' rather than 'means' in defining a term, it does not imply that items not listed fall outside the definition." United States v. Whiting, 165 F.3d 631, 633 (8th Cir. 1999); see Burgess, 553 U.S. at 130. All the other definitions in the Act, with one exception, use "means" rather than "includes." See 30 U.S.C. § 802. The differentiated use of "means" and "includes" by Congress implies that it was mindful of the distinct connotations of the two words when it drafted the definition section. See Sosa v. Alvarez-Machain, 542 U.S. 692, 711 n.9 (2004).

While the text indicates that the term accident extends beyond the definition's enumerated items, ambiguity remains regarding just how far the definition sweeps. Accordingly, we defer to the Secretary's interpretation so long as it is reasonable. Excel Mining, 334 F.3d at 6. The Secretary contends that accident includes events that are similar in nature or have a similar potential to cause death or injury as the listed items. This has been her longstanding position before the Commission and that body has expressed agreement with it. See Aluminum Co. of Am. v. Sec'y of Labor, 15 FMSHRC 1821, 1825–26 (1993). The Act is remedial in nature and its terms

-9-

Case 2:11-cv-01051-LRR   Document 27   Filed 07/31/12   Page 9 of 17
Appellate Case: 12-1194     Page: 9     Date Filed: 07/31/2012 Entry ID: 3937183

should therefore be construed broadly. See Sec'y of Labor, o/b/o Bushnell v. Cannelton Indus., Inc., 867 F.2d 1432, 1437 (D.C. Cir. 1989). The Act's purpose in protecting miners would be undermined if the Secretary lacked the power to take remedial measures simply because all miners fortuitously escaped injury or death in a dangerous mine incident. Accordingly, we conclude that the Secretary's interpretation of the term "accident" to include events that are similar in nature to the listed events or that have a similar potential to cause death or injury is reasonable.

We must next decide whether substantial evidence supported the ALJ's determination that the instant roof fall qualified as an accident. See Aluminum Co. of Am., 15 FMSHRC at 1826 ("Whether a specific event is similar in nature must . . . be determined on a case-by-case basis."). Pattison argues that the roof fall cannot have had a similar risk of death as the listed events because the Secretary stipulated before the ALJ that it was not among the type of roof falls for which immediate reporting is required. See 30 C.F.R. §§ 50.2(h)(8), 50.10 (requiring immediate reporting only if the roof fall occurs in an area "above the anchorage zone in active workings where roof bolts are in use" or if it "impairs ventilation or impedes passage").

We find Pattison's argument unconvincing. The parties agree that the roof fall here involved at least 30 tons of material falling onto a machine while a miner was operating it. The Commission has repeatedly recognized that roof falls are among the leading causes of miner deaths. See Sec'y of Labor v. Big Ridge, Inc., No. 2009-532, 2011 WL 1621389, at *19 (FMSHRC Mar. 1, 2011). Testimony at the hearing suggested that if the mine continued operations in the same manner as before the fall, future roof falls were likely. The roof fall reporting requirement in the regulations is not controlling because the Secretary could reasonably have limited the instances in which an operator is required to report a roof fall immediately without limiting her own ability to respond to such accidents. The evidence before the ALJ was sufficient for a "reasonable mind" to reach the conclusion that a similar potential for death existed with this roof fall as with the events listed in the definition of accident. See

-10-

A&L Labs., Inc. v. Bou-Matic, LLC, 429 F.3d 775, 780 (8th Cir. 2005) (citation omitted).

Pattison contends that even if the roof fall was an accident within the meaning of the Act, the scope of the § 103(k) order exceeded the Secretary's statutory authority because it applied to nearly the entire underground portion of the mine as opposed to the immediate area surrounding the roof fall. It bases its argument on a portion of § 103(k) which states that following an accident, the mine operator must obtain the Secretary's approval of any plan to return "affected areas" of the mine to "normal." 30 U.S.C. § 813(k). The term "affected areas" is not defined, however, and as the ALJ correctly noted, the fact that § 103(k) authorizes the Secretary to issue "such orders as [s]he deems appropriate to insure the safety of any person in the . . . mine," id., suggests that she has the authority to determine the extent of the "affected areas" following an accident.

The company also argues that substantial evidence did not support the finding that the scope of the order was not arbitrary and capricious. It essentially argues that the ALJ failed to give adequate weight to West's testimony that the area where the ground fall occurred suffered from unique moisture problems and that it was a "quantum leap" to extrapolate that the caprock in other areas of the mine would have the same potential for a roof fall. We do not reweigh evidence presented to the ALJ, however. See Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). The ALJ discounted West's testimony because he found that it failed to explain how the unique moisture conditions were a proximate cause of the ground fall and seemed contrived because it was similar to testimony the expert had offered in another case. By contrast, the ALJ found the testimony of the Secretary's expert, Dr. Mark, to be more persuasive since it was based on his observation of prior roof falls at the Pattison mine. Substantial evidence supported the ALJ's finding that the scope of the order was neither arbitrary nor capricious.

-11-

Case 2:11-cv-01051-LRR Document 27 Filed 07/31/12 Page 11 of 17
Appellate Case: 12-1194 Page: 11 Date Filed: 07/31/2012 Entry ID: 3937183

III.

We now turn to Pattison's contention that the ALJ erred by determining that the Commission lacks authority to modify a § 103(k) order. In its initial motion seeking to vacate the order, Pattison had requested in the alternative that the order be modified to limit it to the immediate area surrounding the roof fall. It then filed an emergency motion requesting that the order be modified to allow its experts to enter the prohibited area of the mine to examine and evaluate conditions. The ALJ denied both requests, stating that he lacked authority to modify the Secretary's orders. Alternatively, he characterized the requests for modification as motions for temporary relief under § 105(b)(2) of the Act, 30 U.S.C. § 815(b)(2), and concluded that Pattison failed to meet the requirements for such relief.

Whether the Commission possesses authority to modify a § 103(k) order apart from the Act's temporary relief provision is a question of first impression in the federal courts of appeals. The Act is silent regarding the Commission's ability to review § 103(k) orders, but its power to conduct such review has been recognized by judicial decisions analyzing the Act's structure and legislative history. See, e.g, Am. Coal Co. v. U.S. Dep't of Labor, 639 F.2d 659, 660–61 (10th Cir. 1981). In concluding that the Commission has authority to review § 103(k) orders, the Tenth Circuit looked in American Coal to sections of the Act providing for Commission review of other types of orders, including citations and abatement orders issued under § 104 and imminent danger orders issued under § 107(a). Id. at 660 & n.2. Both provisions provide that following a hearing on the matter, the Commission shall issue an order, based on findings of fact vacating, affirming, or modifying the citation or order. See 30 U.S.C. §§ 815(d), 817(e). The American Coal court also looked to legislative history discussing in general terms the Commission's power of review and providing that ALJs shall "hear matters before the Commission and issue decisions affirming, modifying or vacating the Secretary's order." 639 F.2d at 661 (emphasis added) (quoting S. Rep. No. 95-181, at 13 (1977)).

-12-

Case 2:11-cv-01051-LRR Document 27 Filed 07/31/12 Page 12 of 17
Appellate Case: 12-1194 Page: 12 Date Filed: 07/31/2012 Entry ID: 3937183

In determining that he lacked authority to modify § 103(k) orders, the ALJ relied on decisions holding that because the Act affords the Secretary enforcement authority, while limiting the Commission to adjudicatory functions, the Commission may not find violations not charged by the Secretary or modify an order from one type to another. See, e.g., Sec'y of Labor v. Consolidation Coal Co., 20 FMSHRC 1293, 1298 (1998); Sec'y of Labor v. Mettiki Coal Corp., 13 FMSHRC 760, 764 (1991). On appeal, the Secretary advances this same principle, contending that modification of § 103(k) orders is barred by SEC v. Chenery Corp., 332 U.S. 194 (1947). There, the Supreme Court held that in reviewing acts of administrative agencies, a court "must judge the propriety of such action solely by the grounds invoked by the agency." Id. at 196. The Secretary now asserts that the Commission would impermissibly substitute its own judgment for that of the agency if it were to modify a § 103(k) order. We note that because the Secretary did not advance this argument in the administrative proceedings, it is not entitled to deference on appeal. See Martin v. Occupational Safety & Health Review Comm'n, 499 U.S. 144, 156 (1991) ("[A]gency 'litigating positions' are not entitled to deference when they are . . . advanced for the first time in the reviewing court." (citations omitted)).

We conclude after study that the Commission has the power to modify § 103(k) orders. First, the Secretary does not challenge the Commission's ability to review § 103(k) orders and affirm or vacate them. The Commission's power to conduct such review is based on legislative history and other provisions of the Act which also suggest that it generally has the power to modify the orders it reviews. See Am. Coal Co., 639 F.2d at 660–61. It follows that if the Commission can review § 103(k) orders, it also has the power to modify them. Second, the ALJ's reliance on Commission authority holding that it and its administrative law judges may not change an order from one type to another or increase the number of charged violations is misplaced. Pattison's requested modifications are not of this character. The modifications it seeks would maintain the Secretary's order as a § 103(k) order, but lessen its severity by limiting the scope of the order or by permitting its experts access to the mine. This approach is in line with Commission authority discussing modification of a § 104 order and indicating that an ALJ may "modify a citation or

-13-

order so long as the essential allegations necessary to sustain the modified enforcement action are contained in the original citation or order." Sec'y of Labor v. Mechanicsville Concrete, Inc. t/a Materials Delivery, 18 FMSHRC 877, 880 (1996). The allegations sustaining the original order here would continue to support a grant of Pattison's modification requests.

We also find the Secretary's reliance on Chenery unpersuasive. That case dealt with an Article III court reviewing administrative action. Unlike such a court, the Commission is an independent adjudicatory body that "stands in a fundamentally different position in relation to the Secretary than does a court of appeals . . . . The Commission is comprised of persons who 'by reason of training, education, or experience' are qualified to carry out its specialized functions under the Act." Sec'y of Labor v. Old Ben Coal Co., 1 FMSHRC 1480, 1484 (1979) (quoting 30 U.S.C. § 823(a)). Moreover, the Chenery decision reflected a concern about courts entering a "domain which Congress has set aside exclusively for the administrative agency." 332 U.S. at 196. There is less danger of that here since Congress has explicitly provided the Commission with the authority to modify orders issued under the Act. We thus can discern no limiting principle that would allow Commission review of § 103(k) orders but prohibit modification of such orders.

The Secretary contends that even if we determine that the Commission has authority to modify a § 103(k) order, remand is not necessary here because the ALJ determined that the scope of the Secretary's order was not arbitrary and capricious. The ALJ then was proceeding, however, under the assumption that he lacked authority to do anything but enforce the order as written or vacate it entirely. We cannot say that he would have reached the same conclusion had he recognized his authority to modify the order. Accordingly, we remand Pattison's requests for modification of the order to the Commission for its consideration. Upon remand the Commission may well decline to modify the order, but it is for it to make a decision in the first instance. Because we conclude that the ALJ's determination that he lacked authority to modify the § 103(k) order was in error, we do not address Pattison's arguments related to the Act's temporary relief provisions.

-14-

Case 2:11-cv-01051-LRR   Document 27   Filed 07/31/12   Page 14 of 17
Appellate Case: 12-1194     Page: 14     Date Filed: 07/31/2012 Entry ID: 3937183

IV.

We finally address Pattison's challenge to the district court's conclusion that it lacked jurisdiction to consider the company's request for a temporary restraining order and preliminary injunction preventing the Secretary from excluding its experts from the mine. Because this appeal turns on a question of subject matter jurisdiction, our review is de novo. Cmty. Fin. Grp., Inc. v. Republic of Kenya, 663 F.3d 977, 980 (8th Cir. 2011). The Act expressly authorizes district court review in only two provisions, both of which allow for the Secretary, rather than a mine operator, to seek relief. 30 U.S.C. §§ 818(a), 820(j). The Supreme Court has recognized that district court jurisdiction also extends to claims that are "wholly collateral to [the] statute's review provisions and outside the agency's expertise . . . particularly where a finding of preclusion could foreclose all meaningful judicial review." Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 212–13 (1994) (internal quotations and citation omitted).

We conclude that the district court did not err in determining that it lacked jurisdiction to consider Pattison's request for a temporary restraining order or preliminary injunction. While Pattison contends that it is thus denied judicial review, the company sought relief before the district court that was nearly identical to the relief it sought in its emergency motion before the ALJ. Pattison appealed the ALJ's decision to this court, and we have provided review of its claims. Moreover, the relief Pattison sought before the district court required interpretation of the Secretary's authority under the Act and factual determinations about the circumstances at the mine. Such claims fall squarely within the Commission's expertise and are not "wholly collateral" to the Act's review provisions. See Thunder Basin Coal Co., 510 U.S. at 212.

-15-

V.

We grant the petition for review in part in case #12-1194 and remand Pattison's requests for modification of the § 103(k) order to the Commission for its consideration. We also deny in part the petition for review and affirm the ALJ's decision that the Secretary's § 103(k) order did not exceed her statutory authority. In case #12-1196 we affirm the district court's denial of Pattison's request for injunctive relief.

SHEPHERD, Circuit Judge, concurring in part and dissenting in part.

I am pleased to concur with the majority's opinion in this case, except as to Section III, to which I respectfully dissent.

As the majority explains, whether the Commission has the authority to modify the Secretary's section 103(k) order is a question of first impression in our Court and in all other federal courts of appeals. While there appears to be ample authority regarding the Commission's ability to administratively review a section 103(k) order and either affirm or vacate the order, the majority's opinion expands this basic review to bestow upon the Commission the authority to modify orders. Absent any support for such authority in the Federal Mine Safety and Health Act, this expansion exceeds the authority granted to the Commission by Congress.

Pattison argues that support for the Commission's ability to modify a section 103(k) order is found in section 105(b)(2)'s "of any order" language. Section 105(b)(2) states, "the Commission [may] grant temporary relief from any modification or termination of any order or from any order issued under [Section 104] of the Act." 30 U.S.C. § 815(b)(2). The meaning of this section is plain and clear. The Commission may grant temporary relief from a part "of any order," including a section 103(k) order, that has been modified or terminated. Congress did not grant unto the Commission the authority to grant temporary relief from those parts of

-16-

section 103(k) orders that have not been modified or terminated. Pattison contends "there is no conceivably logical explanation" for this interpretation of the Act. However, when we are given statutory text that is plain and clear, our obligation is to apply the text as written. See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

Accordingly, because the Act does not grant to the Commission the authority to modify section 103(k) orders and the plain language of section 105(b)(2) states that the Commission may only grant temporary relief from those parts of a section 103(k) order that have been modified or terminated, I would deny the petition for review in total.

_____

-17-

Case 2:11-cv-01051-LRR   Document 27   Filed 07/31/12   Page 17 of 17
Appellate Case: 12-1194     Page: 17      Date Filed: 07/31/2012 Entry ID: 3937183